STATE of Tennessee, Appellant,

v.

Michael BARONE, Appellee.

Supreme Court of Tennessee,
at Nashville.

March 1, 1993.

Petition to Rehear March 11, 1993.

Rehearing Denied May 3, 1993.

*OPINION*

ANDERSON, Justice.

We granted this application for appeal in order to determine whether the thirteenth juror rule was applicable in this case and to decide two other issues of first impression, namely, the right of a defendant to a physical examination of the complaining witness and the admissibility of a psychologist's testimony under Tenn.R.Evid. 803(4) as to statements made by the complainant.

Michael Scott Barone was convicted of two counts of aggravated rape, and one count of aggravated sexual battery of his minor daughter, M.B., and was sentenced to fifteen years on each count of aggravated rape, and eight years on the aggravated sexual battery. The defendant appealed, contending that the trial judge should have applied the thirteenth juror rule and granted him a new trial based upon the weight of the evidence. The defendant also argued that the trial court erred in denying his motion for an independent physical examination of the complainant by a medical expert, and by admitting into evidence a licensed psychologist's testimony about the complainant's statements to him in his professional capacity. The Court of Criminal Appeals reversed and remanded for a new trial on the grounds that the trial court erred both in admitting into evidence the psychologist's testimony, and in refusing the defendant's request for an independent physical examination. The Court of Criminal Appeals also held that the thirteenth juror rule had been abolished by the Supreme Court, and that they had no power to reinstate the rule.

We agree with the Court of Criminal Appeals that a new trial should be granted. We also agree that the trial court erred in admitting the psychologist's testimony under Tenn.R.Evid. 803(4), as to statements made by the complainant. We do not agree, however, that the trial court erred in refusing the defendant's motion for an independent physical examination of the complainant. Finally, we conclude that the thirteenth juror rule, which has now been reinstated by this Court and the General Assembly, is applicable to this case because

Charles W. Burson, Atty. Gen. and Reporter, and Debra K. Inglis, Asst. Atty. Gen., Nashville, for appellant.

David L. Raybin, Edward M. Yarbrough, Hollins, Wagster & Yarbrough, P.C., Nashville, for appellee.

it was pending on direct appeal at the time the thirteenth juror rule became effective. Based on the foregoing, the result reached by the Court of Criminal Appeals in reversing the convictions and remanding for a new trial is affirmed, upon the separate grounds stated.

### THIRTEENTH JUROR RULE

■ Prior to 1978, it was well-established in Tennessee that a trial judge in a criminal case functioned as the thirteenth juror and weighed the evidence before approving a verdict of guilty. *State v. Johnson,* 692 S.W.2d 412 (Tenn.1985). The leading case of *Curran v. State,* 157 Tenn. 7, 4 S.W.2d 957 (1928), stated the rule:

> [U]nder our system, (a) the trial court exercises the function of a thirteenth juror; (b) that he must weigh the evidence, pass upon the issues, and decide whether they are supported by the evidence; (c) where he fails to do this the case will be reversed and remanded for a new trial; and (d) "that he must be satisfied, as well as the jury" (meaning, in a criminal case, satisfied that the defendant is guilty).

*Id.,* 157 Tenn. at 13, 4 S.W.2d at 958.

In 1978, the U.S. Supreme Court held in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that principles of double jeopardy preclude a retrial of a defendant once a reviewing court has found the evidence to be legally insufficient to support his or her conviction. That holding was applied to state proceedings in *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). In response to those decisions, this Court abandoned the thirteenth juror rule in criminal cases. *See State v. Cabbage,* 571 S.W.2d 832 (Tenn. 1978). After that decision, the U.S. Supreme Court clarified the holding of *Burks* by stating that a retrial after a reversal based upon the weight, rather than the legal sufficiency of the evidence, does not constitute double jeopardy. *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). After *Tibbs,* the constitutionality of the thirteenth juror rule was clearly established, but a majority of this Court chose not to reinstate the rule in *State v. Johnson, supra,* because they felt that the weight-of-evidence standard would be difficult to apply rationally and uniformly in criminal cases. However, two members of this Court dissented and commented that "[t]his rule may be the only safeguard available against a miscarriage of justice by the jury." *Id.,* 692 S.W.2d at 415 (Drowota, J., and Fones, J., dissenting). *See also State v. Adkins,* 786 S.W.2d 642 (Tenn.1990).

This Court reconsidered the issue upon the favorable recommendation of the Advisory Commission on the Tennessee Rules of Criminal Procedure. Thereafter, we promulgated an amendment to Tenn. R.Crim.P. 33, which was approved by the General Assembly and became effective on July 1, 1991, and was applicable to all cases tried on and after that date. The amendment provided:

> **New trial where verdict is against the weight of the evidence.**—The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence. If the trial court grants a new trial because the verdict is contrary to the weight of the evidence, upon request of either party the new trial shall be conducted by a different judge.

Returning to the facts of this case, the defendant acknowledged in his motion for a new trial that the thirteenth juror rule had been abolished in Tennessee, but in anticipation of it being reactivated, asked the trial court judge to act as the thirteenth juror and grant him a new trial because the weight of the evidence did not establish the defendant's guilt beyond a reasonable doubt. In ruling on the motion, the trial court judge commented:

> Let me tell you, honestly, my answer to that question. Do I, the Judge, believe that the proof in this case, my opinion, establishes proof beyond a reasonable doubt? The answer to that question is, no. In listening to the proof and the evidence in this case, I would have resolved it differently. The proof indicated to me that while there was evidence that

Mr. Barone was guilty of this offense, it did not convince me, the Judge, beyond a reasonable doubt that he was guilty. Having said that, it is also obvious that I would grant a motion for a new trial if I had that power, which I don't.

Clearly, the trial judge would have applied the thirteenth juror rule if it had been in existence at the time of the trial and would have granted the defendant a new trial.

In *State v. Enochs*, 823 S.W.2d 539 (Tenn.1991), we held that the thirteenth juror rule applies to all cases which were pending on direct review at the time the rule was reinstated and became effective. Because this case was pending on direct appeal when the 1991 Amendment restoring the thirteenth juror rule became effective, and because the issue has been properly preserved on appeal, the rule applies. Accordingly, for this reason alone, the convictions must be reversed, and the case remanded for a new trial.

### ADMISSIBILITY OF PSYCHOLOGIST TESTIMONY

■ In this issue of first impression, the trial court held that the testimony of a psychologist as to the complaining witness's statements came within the hearsay exception of Rule 803(4) of the Tennessee Rules of Evidence because the statements were made for the purpose of medical diagnosis and treatment. The Court of Criminal Appeals reversed, holding that a statement made to a psychologist is not made for the purpose of *medical* diagnosis and treatment because the rule is limited to statements of physical condition made to medical doctors, and therefore, it does not include statements of psychological condition made to a psychologist.

M.B., the complaining witness was referred by her civil attorney to Jay Woodman, a licensed psychologist, approximately six months after the defendant's arrest, because of the death of the child's previous psychologist. The referral occurred at a time when both civil and criminal proceedings were pending against the defendant.

Before Woodman testified in the presence of the jury, the trial judge conducted a jury-out hearing to determine the nature and admissibility of his testimony. At the hearing, Woodman stated that his sessions with M.B. were for the purposes of both medical diagnosis and treatment. He stated that M.B., although only three years old when she began seeing him, understood that she came to him for treatment, and that he was there "to help her and to try to help her cope with some of [the] things that bother her." He said that in the course of the treatment, while at times drawing, coloring, or playing, M.B. had told him that the defendant had touched her private parts with both his hand and his penis. The trial court ruled that Woodman could testify to the statements made to him by the complainant under Tenn.R.Evid. 803(4), which provides:

Statements made *for purposes of medical diagnosis and treatment* describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

(Emphasis added.) The trial judge relied upon two federal cases for his conclusion that Woodman's status as a licensed psychologist did not defeat admissibility under the rule. *See Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988); *United States v. DeNoyer*, 811 F.2d 436 (8th Cir.1987). The Court of Criminal Appeals' opinion relied on the significant differences between the statutory definitions of the two professions and the language of Tenn. Code Ann. § 63–11–204(a) that a psychologist must refrain from "infringing upon the practice of medicine as defined in the laws of this state." The court held that the word "medical" in the state rule encompasses only statements relating to physical ailments, injuries, and deformities. It does not include statements made by a patient to a psychologist. This is true even though the statements are reasonably pertinent to the psychological condition of the patient and were made for diagnosis and treatment of the condition. The State contends that the trial court was correct in finding that Woodman's status

as a psychologist does not defeat admissibility under the rule.

The rationale underlying the hearsay exception for statements made for purposes of medical diagnosis and treatment is that the declarant's motive of obtaining improved health increases the statement's reliability and trustworthiness. This motivation is considered stronger than the motivation to lie or shade the truth. Patients generally go to doctors to receive treatment, and treatment usually depends, in part, on what is said; thus the declarant has a self-interested motive to tell the truth. *See* Cohen, Paine & Sheppeard, *Tennessee Law of Evidence* § 803(4).1 at 425 (2d. ed. 1990); *People v. LaLone*, 432 Mich. 103, 437 N.W.2d 611, 613 (1989). However, when the complaints are psychologically based, the Michigan Supreme Court pointed out:

> [W]hile medical patients may fabricate descriptions of their complaints and the general character of the causes of these complaints, ... fabrications of physical complaints would seem to be far easier to discover through empirical tests than are fabrications which might be heard by an examining psychologist. Indeed, statements which are untrue, and which are (sic) examining psychologist knows to be untrue, may nevertheless serve as a basis for accurate psychological diagnosis and treatment.

437 N.W.2d at 613.

As Professor Mosteller of Duke University Law School, in his comprehensive article entitled *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment*, 67 N.C.L.Rev. 257 (1989), observes, "there can be little argument that as a class psychological maladies are less subject to verification than physical maladies," and that a substantial argument can be made that "the [803(4)] exception should be limited to the generally more precise and objective determination of physical, as opposed to mental, condition." *Id.* at 268.

For example, the medical patient knows that "the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides." C. McCormick, *McCormick on Evidence* § 292 at 839 (E. Cleary 3d ed. 1984). That is not always as clear to patients in a psychological setting, and this is particularly so when a young child is involved. Here, the psychologist Woodman testified that many of the statements were elicited while three-year-old M.B. was drawing or playing. Under such circumstances, as one court has observed, a child may not comprehend the necessity of telling the truth, and the rationale underlying the exception is tremendously weakened. *See State v. Harris*, 247 Mont. 405, 808 P.2d 453, 457 (1991).

While some jurisdictions have admitted the out-of-court statements of victims of child sexual abuse through the testimony of examining psychologists[1], we conclude that the better-reasoned rule is that such statements do not satisfy the rationale and purpose for the exception. *See Hall v. State*, 539 So.2d 1338 (Miss.1989); *State v. Harris*, 247 Mont. 405, 808 P.2d 453 (1991); *State v. J.C.E.*, 235 Mont. 264, 767 P.2d 309 (1988); *Cassidy v. State*, 74 Md.App. 1, 536 A.2d 666 (1988). Therefore, we agree with the Court of Criminal Appeals that the testimony of Dr. Woodman is not admissible under Tenn.R.Evid. 803(4).

### INDEPENDENT PHYSICAL EXAMINATION

■ The defendant in this case filed a motion to require the complainant to be examined by a licensed physician. The trial court denied the motion, concluding there was no compelling reason to justify the examination. The Court of Criminal Appeals reversed, finding a compelling reason for the examination.

Shortly after the report of sexual abuse, three-year-old M.B. was physically examined by Dr. Thomas Yeager, a pediatrician, on December 16, 1987. His medical report

---

1. *See, e.g., State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987); *State v. Bullock*, 320 N.C. 780, 360 S.E.2d 689 (1987); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990); *State v. Nelson*, 138 Wis.2d 418, 406 N.W.2d 385 (1987).

set out physical findings of scarring and adhesions on the upper half of the hymenal ring, and he concluded that the injuries were consistent with sexual abuse.

Prior to trial, the defendant was granted access to Dr. Yeager's report and moved for an order requiring a second physical examination by the defendant's medical expert. The motion was supported by an affidavit of the defendant's medical expert, Dr. Appling, in which he stated that his analysis of the medical report of the examination of M.B. showed that the physical findings of Dr. Yeager were inconsistent with penetration, and that penetration would have produced greater injury than was reported. He concluded that "if there was such penetration, physical signs of such penetration should still be present and a physical examination of the child should be conducted to make this determination."

The State contends that the trial court did not abuse its discretion in denying the defendant's motion.

We begin our analysis by observing that, as a matter of background, "the common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law." *State v. Smith*, 260 So.2d 489, 491 (Fla.1972). Nor does there exist in Tennessee a statutory right to a compelled physical examination of a witness by a criminal defendant, either in the Tennessee Rules of Criminal Procedure or otherwise. It is also true that there are several state courts that, in the absence of such a statutory right, have held there is no constitutional or other basis for defense-demanded physical examinations of alleged sex-offense victims. *See State v. Smith*, 260 So.2d 489, 489–90 (Fla. 1972); *State v. Holmes*, 374 N.W.2d 457, 459 (Minn.App.1985); *State, ex rel. Wade v. Stephens*, 724 S.W.2d 141, 143 (Tex. Crim.App.1987).

■ There are no reported cases in Tennessee addressing this issue. However, there are a number of Tennessee cases dealing with a defendant's right to request a psychological examination of sex-abuse complainants. The analysis to be followed by a trial court in ruling on that type of request is set out in *Forbes v. State*, 559 S.W.2d 318, 321 (Tenn.1977), where this Court followed the general rule when it stated:

> We hold that in any case involving a sex violation, the trial judge has the inherent power to compel a psychiatric or psychological examination of the victim, where such examination is necessary to insure a just and orderly disposition of the cause. Such power should be invoked only for the most compelling of reasons, all of which must be documented in the record. This discretion should be exercised sparingly.

A number of state courts have determined that as in the case of psychological examinations, a trial court may exercise its discretion to order an involuntary physical examination of sex-abuse complainants when the defendant demonstrates a compelling reason for the examination. *People v. Chard*, 808 P.2d 351 (Colo.1991); *State v. D.R.H.*, 127 N.J. 249, 604 A.2d 89 (1992); *State v. Ramos*, 553 A.2d 1059 (R.I.1989); *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992). The decision of a trial court judge to grant or deny a motion for an independent physical examination should not be reversed on appeal absent a manifest abuse of discretion. *Lanton v. State*, 456 So.2d 873, 874 (Ala.Crim.App. 1984); 75 C.J.S. *Criminal Law* § 80 (1952).

State courts have adopted a number of approaches to determining whether an accused sex-offender is entitled to a compulsory physical examination of a complainant.[2] First is the material assistance inquiry, which requires a physical examination when it could lead to evidence of material assistance to the defendant. *See Turner v. Commonwealth*, 767 S.W.2d 557 (Ky.1988). Second is the compelling need inquiry,

---

**2.** One desirable way to avoid the issue of a second, compelled physical examination is for the State to arrange for colposcopic photographs to be taken at the first physical examination, thereby enabling both experts to testify from the same, identical proof. *See State v. Noltie*, 116 Wash.2d 831, 809 P.2d 190, 201 (1991).

which balances the defendant's interest in the evidence against the burden the examination imposes upon the complainant. Some states include a factor-based balancing approach. *See People v. Glover*, 49 Ill.2d 78, 273 N.E.2d 367 (1971); *State v. Ramos*, 553 A.2d 1059 (R.I.1989); *State v. Garrett*, 384 N.W.2d 617 (Minn.App.1986). Third is the exculpatory approach, which allows a defendant a physical examination only when the evidence likely to be obtained could absolutely bar his conviction. *See People v. Nokes*, 183 Cal.App.3d 468, 228 Cal.Rptr. 119 (1986); *State v. Hewett*, 93 N.C.App. 1, 376 S.E.2d 467 (1989). Fourth is the medically deficient standard, which permits an examination only if the prosecutor's examination failed to conform to proper medical procedures. *See State v. Drab*, 546 So.2d 54 (Fla.Dist.Ct.App.1989), *rev. denied*, 553 So.2d 1164 (Fla.1989). *See also* Note, *A Fourth Amendment Approach to Compulsory Physical Examinations of Sex Offense Victims*, 57 U.Chi. L.Rev. 873 (1990).

Initially, we are satisfied that the *Forbes* rule of compelling need should be extended to physical examinations of sex-abuse complainants. We think the practice of granting such physical examinations should be engaged in with great care and only upon a showing of compelling need by the defendant. Other courts have observed, and we agree, that the highly intrusive nature of a physical exam raises the same concerns about emotional trauma, embarrassment, and intimidation to the child victim that are present with psychological examinations. *People v. Chard*, 808 P.2d 351, 355 (Colo. 1991). In addition, we think those concerns should be balanced against the likelihood of the examination producing substantial material evidence that will be beneficial to the defendant's case. *Id.* We recognize that there is a delicate balance to be struck, and that the critical inquiry is whether the evidence sought by the defendant is of such importance to his defense that it outweighs the potential for harm caused by the invasion of the complainant's privacy, including the prospect that undergoing a physical examination might be used for harassment of a prosecuting witness. *See Turner v.* *Commonwealth*, 767 S.W.2d 557, 559 (Ky. 1988).

At least two courts have adopted factor-based balancing approaches to the problem of determining whether the potential for harm outweighs the defendant's compelling need for the evidence. Some of the relevant factors they consider in making this determination include: (1) the complainant's age, (2) the remoteness in time of the alleged criminal incident to the proposed examination, (3) the nature of the requested examination and the intrusiveness inherent in it, (4) the resulting physical and emotional effects of the examination on the victim, (5) the probative value of the examination to the issue before the court, and (6) the evidence already available for the defendant's use. *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903, 907 (1992); *State v. Ramos*, 553 A.2d 1059, 1062 (R.I.1989).

In addition to our adoption of the balancing test, we conclude that the factors set out above, although not exclusive, will provide trial courts with guidance in determining whether a compelling need exists for ordering a compelled physical examination of a complaining witness.

Although the trial court below did not state specific reasons for denying the defendant's motion, our reading of the transcript convinces us a proper result was obtained. Here, the defendant did not allege that there was anything improper or unprofessional about the voluntary physical examination of the complaining witness, nor did he fault the physical findings. His disagreement was with the examining physician's conclusion that the findings supported the allegations of sexual abuse. The defendant forcefully challenged that conclusion at trial, both on cross-examination and with his own expert testimony. Indeed, his medical expert testified that the physical findings did not support the charges of sexual abuse. The defendant's concern is mainly with the relative weight that might be given by a jury to testimony from one expert who has made a physical examination and another who has not. In

our view, this concern does not outweigh the potential for harm caused by the invasion of the witness's privacy. As a result, the reason advanced does not constitute a compelling need that justifies a court-ordered independent physical examination. *See State v. Farr,* 558 So.2d 437 (Fla.Dist. Ct.App.1990); *State v. Drab,* 546 So.2d 54 (Fla.Dist.Ct.App.1989).

Accordingly, the judgment of the Court of Criminal Appeals is reversed as to this issue. If, at the retrial, the motion is renewed, the trial court should apply the balancing test adopted today to determine the issue based on the evidence introduced at the retrial to support the motion.

### CONCLUSION

After careful consideration, we have concluded that the convictions must be reversed and the case remanded for a new trial in light of the 1991 amendment to Tenn.R.Crim.P. 33 adopting the thirteenth juror rule and our recent opinion in *State v. Enochs,* 823 S.W.2d 539 (Tenn.1991), applying the rule to cases pending on appeal when the rule was adopted. We affirm the Court of Criminal Appeals' holding that the trial court erred in admitting the psychologist's testimony as to the out-of-court statements of the complainant under Tenn. R.Evid. 803(4), and reverse their ruling that the trial court should have granted the defendant's motion for an independent physical examination of the complainant. The costs of this appeal are assessed to the appellant, State of Tennessee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.