IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2011

**STATE OF TENNESSEE v. MATTHEW GARRETT**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-63473    Don R. Ash, Judge**

---

**No. M2010-01338-CCA-R3-CD - Filed August 16, 2011**

---

The Defendant-Appellant, Matthew Garrett, was indicted by a Rutherford County Grand Jury for aggravated assault. He was subsequently convicted by a jury of the lesser included offense of reckless aggravated assault, a Class D felony. The Defendant-Appellant was sentenced to three years imprisonment, which was suspended after service of six months. The sole issue presented for our review is whether the evidence was sufficient to support the Defendant-Appellant's conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Guy R. Dotson, Jr., Murfreesboro, Tennessee for the Defendant-Appellant, Matthew Garrett.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jude Santana, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case stems from an incident of road rage which resulted in the Defendant-Appellant striking the victim, Tony Lynch. The proof adduced at trial showed that the victim suffered extensive memory loss as a result of his injury and had no recollection of what occurred on the day of the offense. Additionally, the victim could no longer work or drive. Although not witnesses to the offense, the victim's wife and father testified as to the impact of the injuries on the victim.

Two witnesses, John Ellard and Jeremy Morrill, observed the Defendant-Appellant strike the victim. John Ellard was in the parking lot where the offense occurred and observed

"two vehicles whipping in really fast[.]" He then saw the Defendant-Appellant get out of his SUV truck and the victim get out of his car. He testified that the two men began "verbalizing to one another" or using profanity. The Defendant-Appellant, who appeared "irritated or angry" said "I should kick your ass," and the victim replied, "I'm right here." At this point, neither man had a balled fist. More profane words were exchanged between the men, and while the victim was standing there with his hands to his side, the Defendant-Appellant "just swung and hit [the victim]" with his right fist. Ellard observed the Defendant-Appellant strike the victim's head "towards the temple."

Ellard said that the victim was "immediately unconscious" and "fell completely free fall back, straight back to the asphalt. And his head bounced off the asphalt." The Defendant-Appellant then looked down at the victim, "seemed to kind of smirk about it," and left without rendering any aid. Ellard wrote down the Defendant-Appellant's license plate number and called 911.

Jeremy Morrill testified and confirmed that two cars "pulled into the parking lot driving aggressively." He continued and explained

> [t]he victim pulled in first. And the defendant pulled in second. And they
> both got out of their cars and went towards each other. And were just arguing
> verbally for I'd say maybe close to a minute. And I could just tell by their
> body language that they were having some kind of confrontation.

Morrill believed the confrontation had ended because "both men had their hands down." However, Morrill then observed the Defendant-Appellant "strike the victim once." When Morrill saw that the victim was "really hurt" he ran over to help him. Morrill also confirmed that the Defendant-Appellant left without rendering any aid.

Tannas Knox, a detective with the Murfreesboro Police Department, testified that she was the lead detective on the instant case. She retrieved a video that captured the events of the offense from a business near the offense location. The video was admitted into evidence and played for the jury. She also photographed the crime scene and victim's injuries, which were exhibited to the jury. Detective Knox ran the tag number retrieved from Ellard which "came back to [the Defendant-Appellant]." She also compiled a photographic line up for Ellard and Morrill, both of whom identified the Defendant-Appellant as the person who assaulted the victim.

Dr. Michael Moran, an expert in the area of neurosurgery, testified that he treated the victim in this case. Dr. Moran described the victim's injury as

[A] blunt trauma to the head. The type of injuries that [the victim] had sustained that I dealt with was he had a skull fracture that extended from the temporal region all the way down into the base of the skull. And [the] victim had numerous contusions or hemorrhages inside the brain.

The victim had extensive bleeding in his brain and was placed in an intensive care unit under observation for several days. Dr. Moran explained that the victim's skull fracture, located in the temporal region, was not "the most concerning injury" because the contusions to the brain can become "life threatening" over time.

The victim's "cognitive testing" revealed "slowing of cognitive processes, loss of cognitive flexibility, impaired figural fluency . . . and difficulty with verbal memory for a word list." Dr. Moran confirmed that the victim experienced various impairments due to his injury including a loss of memory, and a limited sense of smell and hearing.

On cross-examination, Dr. Moran stated that the skull fracture could have been caused by the Defendant-Appellant's fist striking the victim or by the victim's head striking the pavement.

The Defendant-Appellant testified that on the day of the offense he was about to leave a bank when he encountered the victim. He stated "I misjudged his [rate] of speed and cut him off pulling out into traffic." Consequently, the Defendant-Appellant claimed that the victim was "on my bumper blowing his horn like immediately." The Defendant-Appellant merged over into the right lane to let the victim pass; however, the victim "pulled up right beside my vehicle and kind of kept the same rate of speed I was going and started cursing at me for cutting him off." The Defendant-Appellant thought he knew the victim, turned to look at him, and the victim "gave him the bird, flipped me off." The Defendant-Appellant said the victim then swerved into his lane, forcing him off the road. The Defendant-Appellant recalled the victim motioning for him to pull over, and he pulled into the parking lot of the offense location.

The Defendant-Appellant exited his vehicle and observed the Defendant-Appellant "lean over in his seat." The Defendant Appellant was unsure what the victim had in his glove box, why the victim was fumbling around on the floor, or what the victim had in his hands. He said they had "words" and "[t]he whole time [the victim] was advancing me, coming straight at me." He observed that the victim was "a lot bigger than what he appeared in his car" and claimed that he did not take any steps toward the victim's vehicle. The Defendant-Appellant recalled

[W]hen he would stop he would cuss for a second. And then we would have words. And then he would start coming toward me again. And then I'd back

-3-

up. And then he finally just got close enough after we exchanged words a few times. "I'm going to kick your ass. I'm going to kick your ass." And then he got close enough. And at this point I believed him that he was going to try to. So I just closed my eyes and swung.

The Defendant-Appellant stated that he only hit the victim because the victim appeared "serious." He did not anticipate fighting the victim when he pulled over. The Defendant-Appellant did not render any aid to the victim because he did not realize the extent of the victim's injuries.

## ANALYSIS

The Defendant-Appellant argues that the evidence was insufficient to support his conviction. In response, the State contends there was sufficient evidence presented for a reasonable jury to conclude that the Defendant-Appellant committed reckless aggravated assault. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct

evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)), perm. to appeal denied (Tenn. Nov. 13, 1990).

An assault is committed when an individual "intentionally, knowingly or recklessly causes bodily injury to another." T. C. A. § 39-13-101(a)(1). An assault, as charged in this case, is elevated to a reckless aggravated assault if the assault is committed recklessly and serious bodily injury to another occurs as a result. Id. § 39-13-102(a)(2). "'Reckless' means that a person acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Id. § 39-11-106(a)(31). "'Serious bodily injury' is bodily injury that involves a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Id. § 39-11-106 (34). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Id. § 39-11-106 (2).

We are compelled to note that the Defendant-Appellant's entire argument in his brief to this court consists of the following:

> The jury acquitted [the Defendant-Appellant] of the charge of aggravated assault; but convicted him of the lesser included charge of reckless aggravated assault. However, there was no evidence to support the requisite reckless conduct.

Nevertheless, the proof adduced at trial, viewed in the light most favorable to the State, showed that the Defendant-Appellant cut the victim off while driving on a street. This led both drivers to pull into a parking lot, stop and exit their cars. The two men then began to "verbalize" and exchange profane words. Two witness observed the men interact. Both witnesses testified at trial that the victim was standing there with his hands to his side when the Defendant-Appellant struck the victim in the head with his fist. As a result of being hit by the Defendant-Appellant, the victim fell back and hit his head on the asphalt. A neurosurgeon testified that the victim suffered "blunt trauma to the head." More specifically, the victim had a skull fracture and numerous contusions or hemorrhages inside the brain. From the Defendant-Appellant's perspective, he was apparently attempting to defend himself. However, the jury rejected his version of events, as was their prerogative. This proof is more than sufficient for a rational juror to find that the Defendant-Appellant committed a reckless aggravated assault upon the victim beyond a reasonable doubt. The Defendant-Appellant is not entitled to relief.

**CONCLUSION**

Based on the above, the judgment of the trial court is affirmed.


_____
CAMILLE R. McMULLEN, JUDGE