IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 2, 2011

**STATE OF TENNESSEE v. MICHAEL D. JOHNSON**

**Direct Appeal from the Circuit Court for Hardin County**
**No. 9171     C. Creed McGinley, Judge**

_____

**No. W2010-02315-CCA-R3-CD  - Filed November 22, 2011**

_____

Defendant-Appellant, Michael D. Johnson, was convicted by a Hardin County jury of rape of a child, a Class A felony, and aggravated sexual battery, a Class B felony.  Johnson was sentenced to twenty-five years in the Department of Correction for rape of a child and ten years for aggravated sexual battery, to be served concurrently.  On appeal, he argues that the evidence was insufficient to support his convictions.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Guy T. Wilkinson, District Public Defender and Richard W. DeBerry, Assistant District Public Defender, Camden, Tennessee for the Defendant-Appellant, Michael D. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Hansel J. McCadams, District Attorney General; and Ed. N. McDaniel, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.**  At trial, I.E.,[1] the victim in this case, testified that he was nine years old on December 3, 2009.  On that date, he, along with his brother and cousin, were spending the night at the apartment of his grandmother, Brenda Rainey.  Johnson was married to Rainey, and lived at the apartment with her.  I.E. described their usual sleeping arrangements when

_____

[1]For sexual abuse cases, the policy of this court is to refer to the victim and the victim's immediate family members by their initials.

they all would stay the night in the apartment. His brother and cousin would share one room, and I.E. would go to bed with Rainey. When Johnson was ready to go to sleep, he would move I.E. from the bed to the couch in the living room. I.E. would then sleep on the couch and Johnson would sleep in the bed with Rainey.

On the night in question, I.E. went to bed with Rainey, and a couple hours later Johnson moved him to the couch. However, Johnson remained in the living room with I.E. watching television. Eventually, Johnson turned the television off and then went to where I.E. was on the couch. Johnson began moving up and down on I.E.'s body repeatedly. I.E. described what happened next:

> [H]e pulled down the covers down to my underwear because I was going to sleep. Then he started pulling down my underwear. When I tried to pull them back up he took his elbows and held me down . . . . And he held my arms there and put my wee-wee in his mouth.

I.E. described what Johnson was doing with his mouth: "[H]e was trying to like lick it. He was like putting it in his mouth and then keeping it in there for a long time. It was like when you drinking with a straw and he would let go then do it again." Johnson stopped briefly to adjust the temperature in the room then returned to I.E. and continued performing fellatio. Johnson, who was in his underwear at this point, also started "playing with [himself]." Johnson told I.E. to touch Johnson's penis, and I.E. refused. Johnson again stopped to adjust the temperature in the room. I.E. said that when Johnson returned, I.E. "tried to give him a hug to make him leave me alone. Then he put his hand in my butt crack to touch my wee-wee." Before Johnson left the living room, he gave I.E. a Pop Tart and turned on the television. Johnson said to I.E., "[D]on't tell on papa because he be in real big trouble." Johnson then went to bed.

During these events, I.E. felt scared and "kind of weird." He thought maybe he was dreaming, but he knew he was not. The next afternoon, I.E. told his father what had happened, and his father reported the incident to the police. I.E. testified that no one told him to say these things.

M.E., I.E.'s father, testified that he called the police after I.E. told him about what had happened.

Brenda Rainey testified that Johnson and I.E.'s cousin were living with her in December 2009. On this particular night, she put I.E. to bed with her around 9:00 or 9:30 p.m. She did not move I.E. to the couch in the living room. When she gave a statement to Officer King, she told him that she had seen Johnson "playing with himself" before.

Officer Tim King of the City of Savannah Police Department testified that, during the investigation of this case, he interviewed Johnson. Johnson told him that I.E. slept on the couch by himself. Johnson said Rainey put him there when Johnson went to bed.

Johnson testified that when I.E. would spend the night, Rainey would usually move him to the couch when Johnson went to bed. Rainey did so on the night in question, and Johnson denied doing the acts of which I.E. accused him. Johnson believed that I.E. was told to allege these offenses to "get [I.E.'s cousin] out of the house."

The following three witnesses testified to Johnson's good reputation for truthfulness: Monty Boney, who had known Johnson for five or six years through marriage and as a neighbor; Christy Gilmore, who had known Johnson for eight and a half years; and Doris Williams, who had known Johnson for twelve years as her brother-in-law.

After the evidence at trial, the jury convicted Johnson as charged for the rape of a child and aggravated sexual battery. This timely appeal followed.

**Analysis.** Johnson argues that the evidence did not support his convictions. He asserts that I.E.'s testimony was not credible because I.E. was told to allege these offenses and because he thought the events were a dream. The State responds that the jury resolved these credibility issues by its guilty verdicts and that the evidence was sufficient to support the convictions. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005) (citing State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. Bland, 958 S.W.2d

at 659 (citing <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not reweigh or reevaluate the evidence. <u>Id.</u> (citing <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978), <u>superseded by statute on other grounds as stated in</u> <u>State v. Barone</u>, 852 S.W.2d 216, 218 (Tenn. 1993)).

Regarding Johnson's conviction for rape of a child, the State was required to prove "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim" and that the victim was "more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a) (Supp. 2007). "Sexual penetration" is defined to include fellatio. <u>Id.</u> § 39-13-501(7) (2006).

Here the evidence supported the conviction of rape of a child. I.E. testified that he was nine years old at the time of the offense. He was lying on the couch in his grandmother's living room when Johnson removed I.E.'s underwear. I.E. attempted to resist, but Johnson held him down and performed fellatio. Under the relevant statutes, these events constituted sexual penetration of the defendant by the victim and therefore the rape of a child.

Johnson was also convicted of aggravated sexual battery. This offense required the State to prove the "unlawful sexual contact with a victim by the defendant," accompanied by one of a number of circumstances, including "[t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4) (2006). "Sexual contact" is defined to include:

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

<u>Id.</u> § 39-13-501(6) (2006). "Intimate parts" is defined to include "the primary genital area, groin, inner thigh, buttock or breast of a human being." <u>Id.</u> § 39-13-501(2).

In this case, the evidence supported the conviction for aggravated sexual battery. I.E. testified that after Johnson stopped performing fellatio on him, he hugged Johnson so Johnson would leave him alone. Johnson then placed his hand between I.E.'s buttocks to touch I.E.'s penis. This evidence was sufficient to prove aggravated sexual battery.

The focus of Johnson's argument on appeal is that the evidence is insufficient because I.E. was not a credible witness. He emphasizes I.E.'s possible motive to falsely accuse him

so that another child would be removed from Johnson's residence. Johnson also argues that the events occurred only in I.E.'s dreams, a possibility I.E. suggested and also denied during his testimony. Johnson contrasts I.E.'s lack of truthfulness with his own good reputation for truthfulness, attested to by three witnesses. These arguments are unavailing, however, as we cannot override the jury's credibility determination. By convicting Johnson of these offenses, the jury clearly rejected his testimony in favor of I.E.'s. The jury is entrusted with judging witness credibility, and we are not permitted to second-guess its decisions. See Bland, 958 S.W.2d at 659. Johnson is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE