# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 16, 2014

## STATE OF TENNESSEE v. JEREMY WENDELL THORPE

**Appeal from the Criminal Court for Davidson County**
**No. 2011A617     Monte Watkins, Judge**

_____

**No. M2014-00169-CCA-R3-CD - Filed March 16, 2015**

_____

Following a jury trial, Defendant, Jeremy Wendell Thorpe, was found guilty as charged of aggravated arson, a Class A felony, and vandalism of a structure of a value of sixty thousand ($60,000.00) dollars or more, a Class B felony. He was sentenced to concurrent sentences of seventeen years for the aggravated arson conviction and nine years for the vandalism conviction. In his appeal of right, Defendant challenges the legal sufficiency of the evidence to support his conviction for aggravated arson. Specifically, Defendant argues that the State failed to prove beyond a reasonable doubt that he "knowingly" committed the offense. An integral part of this issue is Defendant's assertion that aggravated arson requires a "result-of-conduct" knowing *mens rea*. Defendant asserts there are conflicting opinions of this Court as to this issue. The State initially argues that Defendant's motion for new trial was filed one day late, and that as a result, the notice of appeal was not timely filed. The State urges this Court to dismiss Defendant's appeal. In a reply brief, Defendant concedes his motion for new trial was filed late by one day and although the notice of appeal was also late, the timely filing of the notice of appeal should be waived. The State declined to address Defendant's argument that aggravated arson is a "result-of-conduct" offense. Defendant does not challenge the vandalism conviction. After a through review of the record, the parties' briefs, and the applicable law, we conclude that the State's argument that the notice of appeal was filed late is void of merit. Notwithstanding the fact the State waived argument on the "knowing" *mens rea* definition for aggravated arson, we conclude that aggravated arson is not a result-of-conduct offense. Following our review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Eliot Kerner, Franklin, Tennessee, (on appeal); and Nathan Moore, Nashville, Tennessee, (at trial), for the appellant, Jeremy Wendell Thorpe.

Herbert H. Slatery, III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; Sharon Reddick and Tali Rosenblum, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

### *Trial*

We will summarize the evidence presented at trial in light of the fact that the sole issue on appeal is Defendant's challenge to the legal sufficiency of the evidence to sustain his conviction for aggravated arson and more specifically that the State failed to prove the necessary *mens rea* element that Defendant acted "knowingly." In December 2010, Nadir Mardonov owned a house located on Burchwood Avenue in Nashville. He had divided the home into two apartments, one on the ground floor and one which occupied the second floor. Defendant and his girlfriend, Brandi Stanback, resided in the downstairs portion and Nicole Jackson lived alone upstairs. Defendant and Ms. Stanback had been together as a couple for several years as of early December 2010, when Ms. Stanback decided to end the relationship. She moved out of the home on Burchwood Avenue. She did this when Defendant was not in town, and she also moved some of her furniture to storage. Ms. Stanback moved into a hotel. She left her pet cat and some of her clothes and other personal items at the Burchwood Avenue house.

Subsequently, on the evening of December 6, 2010, while Ms. Stanback was at the hotel she received a phone call from Defendant. Defendant told Ms. Stanback that he wanted her to come home. Ms. Stanback stated that she was not going to return to live with Defendant. At trial Ms. Stanback testified that Defendant's response was that he was going to burn up her "stuff" and he would kill or burn her cat. Defendant suddenly terminated the phone call by saying "Oh, shit, I've got to go."

Ms. Stanback called and tried to reach Defendant on both the house landline and on Defendant's cell phone, but he did not answer. Somewhat concerned about Defendant's threats, she drove to the house on Burchwood Avenue about an hour after the phone conversation with Defendant. Upon arrival, Ms. Stanback saw "fire trucks everywhere," and she saw "firemen everywhere." Defendant was also present outside the house. Defendant got into the car with Ms. Stanback. She asked Defendant, "[w]hat did you do?" Defendant told her that he had set a piece of paper on fire and threw it on their bed. On a later date,

Defendant told Ms. Stanback that he had to help Ms. Nicole Jackson get out of the house after the fire started.

The fire had been extinguished by the time Ms. Stanback had arrived at the scene. She went inside and observed that the fire had started in the bedroom. She testified that "everything in the bedroom was just completely burned up." She also testified that the fire had gone through the ceiling of the bedroom and into the upstairs apartment occupied by Ms. Jackson. Ms. Stanback also testified that she, Defendant, and Ms. Jackson all normally parked their respective vehicles in the driveway of the house whenever they were home, and the driveway extended to the back side of the house.

Billy Deering, an Assistant Fire Marshal and the supervisor of the Nashville Fire Department's Fire Investigations Unit, investigated the fire at the home on Burchwood Avenue. At trial he was allowed to testify as an expert witness in the area of fire investigations. He arrived at the scene of the fire at approximately 9:00 p.m. There were several firemen present, and they were in the process of "wrapping up" when Mr. Deering arrived. Ms. Jackson had already been transported to Vanderbilt Medical Center for treatment for smoke inhalation and an injured arm. He testified that there were at least two 9-1-1 calls made - one by Ms. Jackson who initially thought a burglary might be in progress when she heard windows break and the other by Defendant.

After examining the premises, Mr. Deering spoke with Ms. Stanback and Defendant, who were both still inside Ms. Stanback's vehicle. He asked each person what had happened. Defendant initially said he did not know, but shortly thereafter admitted that he had "lit a piece of paper and dropped it on some clothes." Mr. Deering took several photographs of both the outside and the inside of the house. Ms. Jackson's vehicle is displayed in one of the pictures, parked a few feet from the exterior stairs leading up to her apartment. Fire damage was shown on the house's exterior wall near the stairs, indicating that the fire came out of the window of the downstairs bedroom where the fire was started.

In Mr. Deering's expert opinion the fire originated in the downstairs bedroom in a location that Ms. Stanback identified as where a wicker chest was present prior to the fire. He observed that actual damages from the fire (excluding smoke and water damages) were confined to the bedroom where the fire started and to the upstairs room immediately above that bedroom. Mr. Deering testified that in his expert opinion the "fire was an incendiary, which means it was started by human hands. And, in my opinion, [Defendant] started that fire."

On cross-examination Mr. Deering stated that there was some evidence which indicated the fire may have smoldered "for a long period of time" before flames erupted. He

3

based this on Ms. Jackson's statement that she had smelled smoke "for some time" but had investigated inside and outside and saw nothing out of the ordinary. Mr. Deering stated during direct examination that Defendant admitted that he had placed a mattress from a separate bedroom onto the fire in the burning bedroom to try and smother the flames. Mr. Deering testified during dross-examination that Defendant's "[b]ringing the mattress over and adding it on to that smoldering fire, added additional fire load to the fire."

According to the owner of the house, Nadir Mardonov, damages to the house as a result of the fire amounted to approximately eighty-thousand ($80,000.00) dollars.

Nicole Jackson testified that she resided in the apartment above Defendant's apartment in the house on Burchwood Avenue. On December 6, 2010, she was at home in her bedroom when she began to detect a strange chemical smell at approximately 6:00 p.m. She left to get fresh air and some food for dinner. When she returned the odor was still present. She had parked her vehicle about ten feet from the exterior staircase where she "always" parked the vehicle. She arrived back at home about 7:00 p.m. When she was eating her dinner, she started to hear glass breaking at about 8:00 p.m. Her first concern was that someone was breaking into the house. She called 9-1-1 and reported a burglary and went into her bathroom to hide. She left the bathroom after a few minutes and entered her bedroom and living room and noticed smoke filling the upstairs. She called 9-1-1 again and reported a fire. She observed flames upstairs and went to the exterior staircase to escape. The fire had already reached the staircase and flames were going down the metal part. In order to escape, Ms. Jackson had to jump toward the bottom of the stairwell over flames. She hit an elbow on the side of the stairwell which resulted in a hairline fracture. Defendant was at the bottom of the staircase and caught her as she landed at the bottom. She asked Defendant whether he knew what happened concerning the fire and he responded that "Maybe someone wants to scare us." Ms. Jackson learned that the breaking glass that she had heard was the windows downstairs popping out as a result of the fire.

Brandon O'Guin, a patrol officer with the Metro Nashville Police Department, was dispatched to the scene of the fire. He spoke with Defendant. Defendant initially stated that his girlfriend, who had not been at the home all day, possibly had left a cigarette burning in the house. Defendant stated that when he found the flames he put clothes on the fire. Later that night Officer O'Guin was present when Mr. Deering questioned Defendant. Defendant admitted he had started the fire by lighting some paper.

The State rested after Officer O'Guin testified. Defendant did not testify or present any other proof.

*Analysis*

4

We first address the State's initial argument in its brief that Defendant's appeal should be dismissed because Defendant failed to timely file his notice of appeal. The State's argument is without any merit.

A defendant has thirty days from the date judgment is entered in which to timely file his notice of appeal. Tenn. R. App. P. 4(a). However, if a timely motion for new trial is filed, the time for filing a notice of appeal "shall run from entry of the order denying a new trial." Tenn. R. App. P. 4(c).

In the case *sub judice* the State asserts that Defendant filed an untimely motion for new trial 31 days after entry of the judgment of conviction. There are two fallacies to this argument. From the record we discern the following chronology of pertinent events:

**November 5, 2013 –**
Defendant was found guilty by jury verdict. The trial court set a sentencing hearing for December 6, 2013.

**December 6, 2013 –**
Although the judgment of conviction in the appellate record has no indication of being properly "stamp filed" by the trial court clerk (which results in one of the fallacies referenced above) the judgment on its face states that the sentence was, in fact, imposed on December 6, 2013. The judgment of conviction/sentence is not entered until it is actually *filed* with the trial court clerk. *State v. Stephens*, 264 S.W.3d 719, 730 (Tenn. Crim. App. 2007). *See State v. Kenny Kimble*, No. W2012-00407-CCA-R3-CD, 2013 WL 3795949 (Tenn. Crim. App. July 22, 2013). Thus, without a "stamp filed" date placed on the judgment, we can not know for certain what date the judgment was entered. Someone, not necessarily the clerk, filled in a blank space designated as "Date of Entry of Judgment" as "12-6-13." However, this is not sufficient to confirm that date as when the judgment was entered by being filed with the clerk. We note that it is the *State's* responsibility to file the judgment of conviction with the trial court clerk. T.C.A. § 40-35-209(e)(1). It would behoove the State to make sure the judgment of conviction is stamp filed by the clerk with the date of filing of the judgment.

**January 6, 2014 –**
Defendant filed his motion for new trial on this date. The motion is stamped filed and initialed by a deputy court clerk.

5

**January 24, 2014 –**
The trial court entered an order, appropriately stamped filed and initialed by a deputy court clerk on January 24, 2014, which denied Defendant's motion for new trial.

Also, on this same date, Defendant's notice of appeal, appropriately stamped filed and initialed by a deputy court clerk for January 24, 2014, was filed with the trial court clerk.

The only basis for the State's assertion on appeal that Defendant's appeal should be dismissed is that "[t]he defendant's motion for new trial challenging the sufficiency of the convicting evidence was filed on January 6, 2014, 31 days after imposition of the sentence. . . ." However, because the judgment of conviction is not marked by any person in the trial court clerk's office as to the date it was filed, (again, the filing of the judgment is the statutory responsibility of the State) we cannot determine what date the judgment was filed and thus cannot discern clearly from the appellate record what date the time limitation for the timely filing of the motion for new trial began to run.

If we assume the judgment of conviction was actually filed on December 6, 2013, then the State is correct that the 30-day deadline ends on January 5, 2014, and the Defendant's motion for new trial was filed 31 days after the assumed date of filing of the judgment.

When presented with the State's argument in its brief, that the appeal should be dismissed in essence because the motion for new trial was filed one day late, the very first reference material this court turned to was a calendar for January 2014. This was not a difficult reference source to review in light of internet access with "smart phones" and desk computers. We immediately found that the 30th day, January 5, 2014, was a Sunday, and obviously, January 6, 2014, was a Monday.

We accordingly direct the State's attention to Tennessee Rule of Criminal Procedure 45(a)(2):

> **RULE 45.  COMPUTING AND EXTENDING TIME.** – (a) COMPUTING TIME. – The following rules apply in computing any period of time specified in these rules or in any court order.
>
> * * *
>
> (2)  LAST DAY OF PERIOD INCLUDED. – Include the last day of the period unless it is:

6

> (A)　a Saturday, Sunday, or legal holiday; or
>
> (B)　when the act to be done is the filing of a paper in court, a day on which the office of the court clerk is closed or on which weather or other conditions have made the clerk's office inaccessible.
>
> When the last day is so excluded, the period runs until the end of the next day that is not one of the aforementioned days.

Tenn. R. Crim. P. 45(a)(2).

Thus, it is abundantly clear that Defendant's motion for new trial was timely filed. Therefore, the notice of appeal, filed the same day that the order denying the motion for new trial was filed, was also timely filed.

We now turn to the merits of Defendant's argument on appeal that the evidence was insufficient to support his conviction for aggravated arson. Specifically, Defendant argues that the State failed to prove beyond a reasonable doubt the "knowing" *mens rea* element of aggravated arson. Relying upon *State v. Reginald Fowler*, No. E2009-00293-CCA-R3-CD, 2010 WL 3774413 (Tenn. Crim. App. Sept. 29, 2010), Defendant argues that aggravated assault has a "result of conduct" knowingly *mens rea*, specifically quoting from *Reginald Fowler's* unanimous opinion that "[a] person acts knowingly with respect to the result of his aggravated arson when he is aware that his conduct is reasonably certain to cause the result." *Id*. at *17.

Defendant also cites to a contrary holding by a panel of this Court in *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, 2004 WL 2827004 (Tenn. Crim. App. Dec. 9, 2004). Defendant argues, however, that the *Reginald Fowler* decision is the better reasoned decision. With all due respect to Defendant, we cannot agree. The court's statement in *Reginald Fowler*, quoted above, was made in passing while addressing the defendant's argument "that the evidence supports a determination that he set the fire intentionally or recklessly, but not knowingly."

As stated in *Gene Shelton Rucker, Jr.*,

> The mental state of "knowing" is defined in terms of three possible conduct elements: (1) the nature of the Defendant's conduct; (2) the circumstances surrounding the defendant's conduct; and (3) the result of the defendant's

7

conduct. *See* Tenn. Code Ann. § 39-11-302(b) (2003) . . . Offenses within the third category are referred to as "result-of-conduct" offenses. *See State v. Ducker*, 27 S.W.3d 889, 895-96 (Tenn. 2000).

*Id*. at *9.

An issue squarely before the court in *Gene Shelton Rucker, Jr.* was whether aggravated arson was a result-of-conduct offense. *Id*. The court answered in the negative and held,

that aggravated arson is not a result-of-conduct offense, and, therefore, we reject the defendant's complaint that the jury was improperly instructed on the "knowing" element of aggravated arson.

*Id*. at *10.

For whatever reason(s), the State declined to address Defendant's argument that aggravated arson is a result-of-conduct offense. However, even with the State's waiver of argument concerning this issue, we conclude that *Gene Shelton Rucker, Jr.*, where the precise issue raised by Defendant in the case *sub judice* was addressed, determines this issue against Defendant's assertions. We will therefore examine the sufficiency of the proof of the "knowing" *mens rea* in light of *Gene Shelton Rucker, Jr.*

As pertinent to this case, aggravated arson is defined as when a person "commits arson as defined in [T.C.A.] § 39-14-301 . . . [w]hen one (1) or more persons are present therein." T.C.A. § 39-14-302(a)(1). The relevant definition of arson in this case is that "[a] person commits an offense who knowingly damages any structure by means of a fire or explosion: . . . [w]ithout the consent of all persons who have a possessory, proprietary or security interest therein." T.C.A. § 39-14-301(a)(1).

Thus, a person who knowingly damages a house by means of a fire, without the consent of *all* persons who have a proprietary, security, or possessory interest in the house, and this act is done when at least one person is present in the house, commits the offense of aggravated arson.

"When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt,

on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012); *see also State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *See Wagner*, 382 S.W.3d at 297; *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) superseded by statute or other grounds as stated in *State v. Barone*, 852 S.W.2d 216, 218 (Tenn. 1993)). The jury, as the finder of fact, is responsible for assessing the credibility of the witnesses, deciding the weight to accord their testimony, and reconciling any conflicts in the proof. *See Wagner*, 382 S.W.3d at 297; *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this court cannot re-weigh the evidence or draw any inferences from it other than those drawn by the jury. *See Wagner*, 382 S.W.3d at 297; *Cabbage*, 571 S.W.2d at 835. A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of both. "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Taken in the light most favorable to the State, the proof showed that Defendant became angry and vindictive when Ms. Stanback moved out of their home and said she was not going to return. Defendant threatened to burn her stuff and burn or otherwise kill her cat. Defendant told Ms. Stanback and Mr. Deering that he had started the fire. There was circumstantial evidence that he started the fire by burning a wicker chest in the bedroom. There was circumstantial evidence that Defendant knew Ms. Jackson was in her apartment at the time he set the fire. She was at home when she began to smell a strange odor. Ms. Jackson's vehicle was parked in back of the house indicating she was present. Defendant was standing outside at the bottom of the exterior steps when Ms. Jackson exited the burning house. While we question whether the "knowing" *mens rea* even applies to the element that "one (1) or more persons are present" in a structure, if it is applicable, it was proven. The landlord testified that he did not give Defendant consent to set the fire, which caused damage to the house in the amount of approximately eighty-thousand ($80,000.00) dollars. Mr. Deering, an expert witness who investigated the fire in his capacity as supervisor of the Fire Investigations Unit, testified the fire was an incendiary (started by human hands) and that Defendant started the fire.

The "knowing" culpable mental state applicable to aggravated arson requires proof that a defendant "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b).

After making threats to set a fire, Defendant set the fire inside the bedroom of the house where he resided. Ms. Jackson was inside the house when flames erupted. All

9

elements of aggravated arson were established beyond a reasonable doubt. Defendant is not entitled to relief in this appeal, and the judgments of the trial court as to both aggravated arson and Class B felony vandalism are affirmed.

_____

THOMAS T. WOODALL, PRESIDING JUDGE