IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 17, 2014 Session

**STATE OF TENNESSEE v. CHARLES B. DAVIS**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-180     Cheryl A. Blackburn, Judge**

**No. M2013-01903-CCA-R3-CD – Filed March 18, 2015**

A Davidson County jury convicted Defendant, Charles B. Davis, of one count of theft of property valued between $1,000 and $10,000, one count of theft of property valued under $500, and one count of employing a firearm during the commission of a dangerous felony. In addition, the Defendant pleaded guilty to one count of aggravated burglary but was acquitted of an additional count of aggravated burglary. The trial court sentenced the Defendant to an effective sentence of twenty years in the Tennessee Department of Correction as a Range II, persistent offender. On appeal, the Defendant asserts that: (1) the trial court erred in denying the Defendant's motion for judgment of acquittal as to Counts 2 and 5 as there was insufficient evidence to support his convictions for theft of property and employing a firearm during a dangerous felony and (2) the trial erred when it denied his motion for new trial because the trial court failed to properly function as the thirteenth juror as the verdicts were against the weight of the evidence. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

LARRY J. WALLACE, SP. J., delivered the opinion of the Court, in which NORMA MCGEE OGLE, J., and ROGER A. PAGE, J., joined.

James O. Martin, III (on appeal) and Justin Johnson (at trial), Nashville, Tennessee, for the appellant, Charles B. Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Victor S. Johnson, III, District Attorney General; Jeff Burks and Brian Ewald, Assistant District Attorneys General for the appellee, State of Tennessee.

# OPINION
## I. Background and Facts

This case arose from allegations that the Defendant committed theft of property and aggravated burglary on two separate occasions involving two separate victims. One of the occasions involved employment of a firearm. A Davidson County grand jury indicted the Defendant for two counts of aggravated burglary, one count of theft of property valued between $1,000 and $10,000, one count of theft of property valued under $500, and one count of employing a firearm during the commission of a dangerous felony.

At the April 1-2, 2013 trial on these charges, the parties presented the following evidence: Mary Quinn testified that she was a co-worker and friend of Jennifer Picheco. Ms. Quinn testified that she was to watch Ms. Picheco's cat and home on Claybrook Lane, Nashville, Tennessee, from December 23-27, 2011. On December 27, 2011, Ms. Quinn arrived at Ms. Picheco's home and noticed that it had been burglarized. Ms. Quinn testified that the back door to the home was broken. Ms. Quinn contacted Ms. Picheco regarding said burglary. Upon being contacted by Ms. Quinn, Ms. Picheco and Ms. Quinn, with the police's help, determined what items had been stolen.

Jennifer Picheco testified that she lived on Claybrook Lane, Nashville, Tennessee, and that she went to Connecticut to visit family from December 23-27, 2011. Ms. Picheco testified that she locked her house when she left town on December 23, 2011. She further testified that in her absence Mary Quinn was to watch her home and her cat. Ms. Picheco testified that she was contacted by Ms. Quinn on December 27, 2011, and learned that her home had been burglarized. Over the telephone, Ms. Picheco worked with Ms. Quinn and the police to determine what items had been stolen. The items included a television, a laptop and jewelry. According to Ms. Picheco, the unrecovered stolen items were worth a total of more than $1,000.00, but less than $10,000.00. Some of Ms. Picheco's personal property was recovered, including some of her less expensive rings and necklaces, a laptop, birth certificate, passport and some of her Tiffany jewelry holders (though the holders were empty). The television, purses, bags, and her entire Tiffany jewelry collection were never recovered. Ms. Picheco testified that no one other than Ms. Quinn had permission to enter her home and that no one had permission to take the personal items that were stolen. Ms. Picheco testified that the glass doors in the rear of the home had been broken. She further testified that she did not have any firearms in her residence and that she was not acquainted with the Defendant or his co-defendant.

Lee Ann Lisk testified that she was neighbors with Brook Connor, who resided on Southcrest Street in Nashville. Ms. Lisk testified that on December 29, 2011, at 9:30 a.m., she observed an unfamiliar white SUV parked in an odd fashion, closest to the

street rather than to the house. She further noticed two men knocking on the door and windows of Ms. Connor's home. One man looked around the back of the house and the other man looked around the front of the house. Ms. Lisk testified that it appeared very suspicious. She noticed that one of the men was white and tall with lighter hair and the other was Hispanic and shorter with jet black hair. She had never seen the men before and did not see a weapon. As a result of her observations, Ms. Lisk called the police. While on the phone with the police, Ms. Lisk saw the men get into their SUV and drive it behind the carport, close to the side or back of the house where she could no longer see them. Apparently, according to Ms. Lisk, it was during this time that the men entered Ms. Connor's home because when police arrived, they brought the two men outside from Ms. Connor's home.

Brook Connor testified that she and her husband resided on Southcrest Street in Nashville, Tennessee. Ms. Connor testified she left for work on December 29, 2011, at 7:00 a.m. and received a call from police at 10:00 a.m. regarding a break-in at her house. Ms. Connor left work and returned home to find that three of her doors had been broken and her house was in disarray. Ms. Connor testified that the window panes of the side door coming from the carport were broken and that the door was pushed open. That door led to the basement and the intruders broke through two additional locked doors to access the main part of the house. The intruders also made a hole in the dry wall where, presumably, the door leading to the kitchen was kicked in. No items were taken from her residence. However, her laptop computer, worth $250.00, that she had left sitting on her living room couch had been moved to the bed in the bedroom. Ms. Connor testified that she had not given anyone permission to enter her home or take her personal belongings from inside her home. She further stated she did not have any firearms in her residence. Ms. Connor testified that the amount of damage done to the doors in her home was $400.00 to $500.00.

Sergeant Jason Spencer of the Metro Nashville Police Department testified that he responded to both Ms. Picheco's and Ms. Connor's homes after the break-ins. Sergeant Spencer further stated that both homes were in the same general area of South Nashville within five miles of one another. Sergeant Spencer observed that both homes had been burglarized. Specifically on December 27, 2011, Sergeant Spencer noticed that at Ms. Picheco's home there was a broken glass door and observed where missing items such as the television and jewelry should have been located.

On December 29, 2011, Sergeant Spencer stated that Detective Phillip Klarer, Detective Robert Shotwell, and Detective Andrew Nash assisted in responding to the burglary at Ms. Connor's home. Upon arriving at Ms. Connor's residence, they saw the white SUV reported by Ms. Lisk sitting in the driveway. Sergeant Spencer stated that in response to the burglary at Ms. Connor's home, the police entered into the home through

the side carport door where the intruders had entered. After a thorough search of the home, the Defendant and co-defendant were located hiding in a "false spot" inside the basement. Between the two men, there was a 12-gauge shotgun propped against a guitar case at their feet. No one else was located inside the home. Inside the 2005 white ford expedition (white SUV) registered to the co-defendant, which was parked at Ms. Connor's house, police found Ms. Picheco's laptop, her Tiffany jewelry bags, a hunting rifle, and Ms. Picheco's passport.

After the Defendant was arrested, he saw the detectives looking at the firearms and asked Sergeant Spencer if the two guns police had recovered were listed as stolen. When Sergeant Spencer responded that he did not know yet, the Defendant stated, "Well, they shouldn't be, I bought them from a reliable source." No usable fingerprints were lifted from the weapons.

Detective Nash interviewed the Defendant at the police station and Defendant executed a *Miranda* waiver. Defendant then admitted that he broke into Ms. Connor's house. Defendant denied breaking into Ms. Pechico's house and asserted that Ms. Pechico's personal property was found in a vehicle he did not own. Defendant admitted that he purchased the guns but would not reveal from whom. Defendant further stated, "I mean I'll take the guns, they aren't nothing, I'll take them."

Based on this evidence, the jury acquitted the Defendant in count 1—aggravated burglary, convicted the Defendant in count 2—theft of property valued between $1,000 and $10,000, convicted the Defendant in count 4—theft of property valued under $500, and convicted the Defendant in count 5—employing a firearm during the commission of a dangerous felony. The Defendant had already pled guilty in count 3—aggravated burglary. The trial court sentenced the Defendant to an effective sentence of twenty years in the Tennessee Department of Correction as a Range II, persistent offender. It is from the judgments in Counts 2 and 5 that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that: (1) the trial court erred in denying the Defendant's motion for judgment of acquittal because there was insufficient evidence to support his convictions for theft of property and employing a firearm during a dangerous felony and (2) the trial erred when it denied his motion for new trial because the trial court failed to properly function as the thirteenth juror as the verdicts were against the weight of the evidence.

### A. Sufficiency of the Evidence

The Defendant asserts that the evidence was insufficient to support his convictions in count 2—theft of property valued between $1,000 and $10,000—and count 5—employing a firearm during the commission of a dangerous felony. Specifically, the Defendant argues that there was insufficient evidence to conclude that the Defendant stole, possessed, or even had knowledge of the items belonging to Ms. Picheco that were recovered from his co-defendant's vehicle. The Defendant also asserts that even if the theft conviction in Count 2 were valid, Ms. Picheco's testimony regarding the value of the items discovered in the co-defendant's vehicle mandates that said conviction be reduced to a misdemeanor. Lastly, Defendant argues that there was insufficient evidence that the Defendant employed the shotgun possessed by both defendants inside Ms. Conner's residence. The State responds that the record supports the Defendant's convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)).

In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State

and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), *superseded by statute on other grounds*, Tenn. R. Crim. P. 33, *as recognized in State v. Barone*, 852 S.W.2d 216, 218 (Tenn.1993) (internal quotation marks omitted). The Tennessee Supreme Court explained the rationale for this rule, stating:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)).

To be sure, this Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

## 1. Theft of Property Conviction in Count 2

A person commits theft of property if that person: (1) "knowingly obtains or exercises control over the property," (2) "with intent to deprive the owner" of the property, and (3) "without the owner's effective consent." T.C.A. § 39-14-103 (2011). In addition to these three elements, the fact-finder must also determine the classification of the theft based on the value of the property stolen. Theft of property valued at more than $1,000.00 but less than $10,000 is a Class D felony. T.C.A. § 39-14-105 (3) (2011). Theft may also be inferred by the mere possession of recently stolen goods. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987).

The evidence, considered in the light most favorable to the State, shows that, on December 27, 2011, Ms. Quinn discovered that the door of Ms. Picheco's home was

broken and items had been stolen from inside the home.  Ms. Picheco valued the stolen property at more than $1,000.00 and less than $10,000.00. This valuation was based solely on the unrecovered television and Tiffany jewelry. The empty Tiffany jewelry bag and Tiffany box found in the SUV-Expedition at Ms. Connor's home were identified by Ms. Picheco as her personal property. The evidence showed that the Defendant and co-defendant arrived at Ms. Connor's home together in the co-defendant's SUV-Expedition. This same Expedition where some of Ms. Picheco's stolen property was recovered. The Expedition with Ms. Picheco's stolen property therein was located at the site of an aggravated burglary (Ms. Connor's) at which the Defendant was apprehended and which the Defendant admitted to committing. The Picheco and Connor homes were accessed the same way—with glass doors kicked in and broken. The Defendant admitted that the shotgun found between him and the co-defendant inside Ms. Connor's home was his.

More importantly, the Defendant acknowledged that the additional firearm in the Expedition was his property, too.  This additional fact links the Defendant to the Expedition and obliterates his claim that he had no knowledge of Ms. Picheco's stolen property in the Expedition.  This indicated that the Defendant knowingly exercised control over Ms. Picheco's unrecovered property as well as the recovered property. With the link of the Tiffany bag and Tiffany box to the Expedition, a jury could reasonably determine that Ms. Picheco's stolen property valuation of the unrecovered items was sufficient to support the Defendant's conviction for theft of property over $1,000.00.

In addition, it was reasonable for a jury to infer that the Defendant and co-defendant also targeted Ms. Picheco's home in the same manner that Ms. Connor's home was targeted.  Ms. Picheco's and Ms. Connor's homes were only five miles apart.  Both crimes occurred during the holiday season in a specific area where the police "had been having issues with residential burglary problems."  Further, the proof and circumstances surrounding the break-in at Ms. Connor's home permitted the jury to draw the reasonable inference that the Defendant was also guilty of stealing or knowingly exercising control over the items from Ms. Picheco's home.

Based on this evidence, we conclude that there was sufficient evidence presented upon which a jury could find, beyond a reasonable doubt, that the Defendant knowingly possessed personal property worth more than $1,000, without the owner's consent, and continued to exercise control over the personal property with the intent to deprive the owner of the same.  As we earlier stated, the jury is entitled to weigh the evidence and determine the inferences to be drawn from the evidence. *Rice*, 184 S.W.3d at 662.  The jury observed and heard the witnesses testify at trial and weighed the evidence the State presented.  The jury made reasonable inferences based on this evidence and convicted the Defendant, beyond a reasonable doubt, of theft of property valued between $1,000 and

$10,000.  We conclude that there was sufficient evidence to support the jury's verdict.  The Defendant is not entitled to relief as to this issue.

## 2. Firearm Conviction in Count 5

A person commits the offense of possessing a firearm during the commission of or attempt to commit a dangerous felony as follows: . . . (b) "It is an offense to employ a firearm during the: (1) Commission of a dangerous felony; (2) Attempt to commit a dangerous felony; (3) Flight or escape from the commission of a dangerous felony; or (4) Flight or escape from the attempt to commit a dangerous felony."  T.C.A. § 39-17-1324 (b).  Aggravated burglary is a dangerous felony.  T.C.A. § 39-14-403.  "Employ means to make use of." TPI-Crim. 36.06(c) (15th edition).

The evidence, considered in the light most favorable to the State, shows that the Defendant pled guilty to the aggravated burglary of Ms. Connor's home. With regards to the firearm offense, the State elected to prosecute the Defendant under Section (b). The Defendant was found hiding with his co-defendant in a "false spot" inside the basement of Ms. Connor's home.  In the "false spot," between the Defendant and co-defendant was a 12-gauge shotgun at their feet.  Later, the Defendant admitted that the shotgun was his personal property.  The jury could reasonably infer that the only possible explanation for the Defendant possessing said shotgun in Ms. Connor's home was to use it to successfully accomplish the aggravated burglary.

The jury observed and heard the witnesses testify at trial and weighed the evidence the State presented.  The jury made reasonable inferences based on this evidence and convicted the Defendant, beyond a reasonable doubt, of employing a firearm during the commission of a dangerous felony.  Based on this evidence, we conclude that there was sufficient evidence presented upon which a jury could find, beyond a reasonable doubt, that the Defendant intentionally, knowingly, or recklessly committed the act of employing a firearm during the commission of a dangerous felony. We conclude that there was sufficient evidence to support the jury's verdict.  The Defendant is not entitled to relief as to this issue.

## B. Thirteenth Juror

Defendant next contends that because no rational trier of fact could have concluded that the essential elements for the offenses charged were established, the trial court, as the thirteenth juror, should have vacated the convictions in counts 2 and 5 and granted the motion for new trial.  Defendant cites to the insufficiency of evidence argument section of his brief in support of this contention and makes no additional argument as to why the trial court failed in its role as thirteenth juror.  Because we have

previously concluded that the evidence was sufficient to support Defendant's convictions in counts 2 and 5, we further conclude that, in this regard, the trial court did not fail in its role as thirteenth juror. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____

LARRY J. WALLACE, SP., JUDGE