IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 10, 2016

**STATE OF TENNESSEE v. BERNARD NELSON**

**Appeal from the Circuit Court for Montgomery County**
**No. CC14-CR-991     Ross H. Hicks, Judge**

_____

**No. M2015-01690-CCA-R3-CD – Filed July 6, 2016**

_____

A Montgomery County jury convicted the Defendant, Bernard Nelson, of two counts of indecent exposure. On appeal, the Defendant asserts that the State breached its duty to preserve potentially exculpatory evidence. The Defendant also contends that the convicting evidence is insufficient to sustain his convictions. We affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Wayne Clemons, Clarksville, Tennessee, for the appellant, Bernard Nelson.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and J. Lee Willoughby, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 3, 2014, a Montgomery County grand jury indicted the Defendant for two counts of indecent exposure for exposing his genitalia to a maintenance technician and groundskeeper for the Montgomery County Courts Center. At trial, the victim testified about two encounters she had with the Defendant in July 2014, while engaged in her work at the Montgomery County Courts Center. On July 14, 2014, the victim was bringing plants located by an outside fountain into the courthouse due to an imminent storm. She picked up a large planter and, when she opened the courthouse door, the Defendant was facing her with his penis out of his pants. The victim had

noticed the Defendant around the courthouse earlier in the day "touching himself" "in and around his genitals." The victim filed a police report on the following day, July 15, 2014.

On July 16, 2014, the victim was working outside when she saw the Defendant, so she started to make her way back to the loading dock. Once at the loading dock, she began shutting the door when she saw the Defendant standing there, looking at her, with his penis exposed. The victim closed the dock door and later requested a copy of courthouse surveillance video. The victim filed a second police report on the July 16 incident.

The State played the surveillance video footage from the July 14, 2014 incident and the July 16, 2014 incident. In the July 14 footage, the victim is retrieving planters from the area around a fountain. The Defendant approaches the area, looking at the victim, places his hands in his pants, and appears to manipulate his penis. A second portion of footage from July 14, taken in the breezeway area of the courthouse, shows the Defendant reaching for his crotch area. The victim explained that the Defendant was putting his penis back in his pants. In the July 16 footage, the victim is seen pushing a "leaf vacuum" down the sidewalk. The Defendant can be seen at a distance walking behind her. The screen shot changes, and the victim closes the dock door while the Defendant walks across the doorway with his hand on his penis.

On cross-examination, the victim testified that the "IT" employee who copied the footage "did not do all of the whole video on this tape." She explained that there were several videos and that the IT person selected the most useful segments and copied those portions for the victim.

Defense Counsel provided the victim with her statement to police that indicated the incident occurred on July 15, 2014. The victim explained that she told the officer what had occurred and that he wrote it down. The victim confirmed that the indictment listed July 14 and 16, 2014, as the offense dates.

On redirect examination, the victim confirmed that, although there were other cameras located at different angles recording that day, it was possible those other recordings did not depict the incident as well as what was shown in court.

The Defendant testified that he was not in the courthouse yard on July 16, 2014. He explained the route that he walked that day while carrying his "homeless sign." He walked from Madison Street to Commerce Street and then walked up Commerce Street to Second Street. On Second Street, he "was going to" take the city bus to "go to work on the highway" panhandling. The Defendant stated that he often panhandled in the area

2

around the courthouse and had been "run off" by deputies on at least eight occasions. The Defendant explained that he was homeless and that panhandling was his job.

The Defendant testified that he was arrested on July 16, 2014, near the Captain D's on Madison Street for panhandling. Fifty-eight hours later, while he was still in jail for the panhandling incident, the Defendant was served with the warrants in this case. The Defendant said that the original charge for panhandling was dismissed.

On cross-examination, the Defendant agreed that he was in the surveillance video footage shown to the jury. He, however, disputed that the second recording was taken on July 16, insisting that he was not in the courthouse yard that day. The Defendant agreed that the route he described, walking down Second Street to Franklin Street, took him right past the loading dock depicted in the July 16 surveillance video footage.

Daniel Stephenson testified that he was initially the prosecutor representing the State for these charges. He recalled receiving the July 14 and July 16 surveillance video footage, and he said it was his understanding that the footage was "the only video that could be retrieved." He stated that this was because the courthouse did not maintain all recordings indefinitely.

After hearing this evidence, the jury convicted the Defendant of two counts of indecent exposure. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal the Defendant asserts that the State breached its duty to preserve exculpatory evidence and that the convicting evidence is insufficient to sustain his convictions.

## A. Duty to Preserve Evidence

The Defendant contends that the State had a constitutional duty to preserve all of the video footage referenced by the victim during her trial testimony and, by failing to do so, denied the Defendant a fair trial. The State responds that the trial court properly denied the Defendant's motion for a judgment of acquittal based upon the State's duty to preserve evidence. We agree with the State.

The State has a general duty to preserve all evidence subject to discovery and inspection as part of Tennessee Rule of Criminal Procedure 16. *State v. Ferguson* addresses claims regarding the State's duty to preserve potentially exculpatory evidence. 2 S.W.3d 912, 917 (Tenn. 1999); *see also State v. Merriman*, 410 S.W.3d 779, 785

3

(Tenn. 2013). *Ferguson* requires a trial court to determine "[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair." 2 S.W.3d at 914. When this claim is raised by a defendant, *Ferguson* first requires the trial court to determine whether the State had a duty to preserve the evidence. *Id.* at 917. In the Tennessee Supreme Court's recent case, *Merriman*, it stated:

> In *Ferguson*, we acknowledged the State's general duty to preserve all evidence subject to discovery and inspection under Rule 16 of the Tennessee Rules of Criminal Procedure and other applicable law, including *Brady v. Maryland*, 373 U.S. 83 (1963). *Ferguson*, 2 S.W.3d at 917. We recognized, however, the difficulty in defining the boundaries of the State's duty to preserve evidence when its true nature, whether exculpatory, inculpatory, or neutral, can never be determined. *Ferguson*, 2 S.W.3d at 915, 917.

> Although difficult to define, the State's duty to preserve evidence is limited to constitutionally material evidence described as "evidence that might be expected to play a significant role in the suspect's defense." *Ferguson*, 2 S.W.3d at 917 (quoting *California v. Trombetta*, 467 U.S. 479, 488, (1984)). To meet this materiality standard, we held that the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Ferguson*, 2 S.W.3d at 915, 918. If the trial court determines that the State had a duty to preserve the evidence, the court must determine if the State failed in its duty. *Ferguson*, 2 S.W.3d at 917.

*Merriman*, 410 S.W.3d at 785 (footnote omitted).

The *Merriman* Court explained that if the proof demonstrates the existence of a duty to preserve the evidence and demonstrates that the State failed in that duty, "the analysis moves to considerations of several factors which guide the decision regarding the consequences of the breach." *Id.* Those factors include: "(1) The degree of negligence involved; (2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) The sufficiency of the other evidence used at trial to support the conviction." *Id.* at 785 (citing *Ferguson*, 2 S.W.3d at 917). "If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges." *Id.* If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a

4

fair trial, including, but not limited to, dismissing the charges or providing a jury instruction. *Id*.

We must now consider whether the State had a duty to preserve the courthouse surveillance video recordings. As noted above, the State has a duty to preserve all evidence subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16. The issue before us, though, is whether the record supports the Defendant's contention that the State failed to preserve this evidence. The Defendant relies upon a speculative statement by the victim, who was not responsible for surveillance video equipment, to support his contention that relevant portions of surveillance footage were destroyed. The victim, however, made no definitive statement that any material evidence was destroyed, and the Defendant did not call any other witnesses to attest to the fact that the material evidence was destroyed. Furthermore, there is no evidence that any unpreserved video would have been helpful to the Defendant's case. Therefore, we conclude that there is no conclusive proof in the record that the State breached its duty to preserve the evidence. The Defendant is not entitled to relief on this issue.

### B. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the convicting evidence. He bases his challenge on the alleged contradictions between the victim's and Defendant's testimony. The State responds that the Defendant's argument addresses the credibility of witnesses, an issue within the province of the jury; therefore, he is not entitled to relief. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457

5

(Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), *superseded by statute on other grounds as stated in State v. Barone*, 852 S.W.2d 216, 218 (Tenn.1993) (quotations omitted). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

According to Tennessee Code Annotated section 39-13-511 (2014):

(a)(1) A person commits the offense of indecent exposure who:

6

(A) In a public place, as defined in § 39-11-106, or on the private premises of another, or so near thereto as to be seen from the private premises:

(i) Intentionally:

(a) Exposes the person's genitals or buttocks to another; or

(b) Engages in sexual contact or sexual penetration as defined in § 39-13-501; and

(ii) Reasonably expects that the acts will be viewed by another and the acts:

(a) Will offend an ordinary viewer; or

(b) Are for the purpose of sexual arousal and gratification of the defendant;

The evidence, viewed in the light most favorable to the State, showed that the Defendant, on July 14, 2014, and July 16, 2014, exposed his penis to the victim. Surveillance footage corroborated the victim's testimony about her two encounters with the Defendant during her work day at the courthouse. This is sufficient evidence upon which a jury could find the Defendant guilty, beyond a reasonable doubt, of indecent exposure for acts committed on July 14 and 16, 2014.

The Defendant specifically argues that his testimony that he was not at the courthouse undermined the victim's testimony. He contends that his denial, combined with the allegedly inconsistent dates presented through the victim's testimony and the police report, shows that the State failed to introduce sufficient evidence to establish the Defendant's guilt of these crimes. As stated above, questions concerning the credibility of the witnesses are resolved by the trier of fact. *Bland,* 958 S.W.2d at 659. The jury heard the Defendant's version of the events when he testified at trial as well as the victim's testimony. The jury by its verdict accredited the testimony of the victim. This Court does not second-guess the weight, value, or credibility afforded to the evidence by the jury. We conclude that the State presented sufficient evidence to support the Defendant's convictions.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____

7

ROBERT W. WEDEMEYER, JUDGE