IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2016

**STATE OF TENNESSEE v. JAMES MOORE**

**Appeal from the Criminal Court for Shelby County**
**No. 1400576          James C. Beasley, Jr., Judge**
_____

**No. W2015-01483-CCA-R3-CD  -  Filed August 23, 2016**
_____

The defendant, James Moore, was convicted of one count of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony, and sentenced in each case, as a Range II offender, to forty years confinement. The court merged the Class B aggravated sexual battery conviction into the Class A rape of a child conviction. On appeal, the defendant argues, as to each conviction, that the evidence was insufficient to sustain the conviction and the sentence was excessive. Following our review, we conclude that the arguments are without merit as to the conviction for rape of a child and affirm the judgment for that conviction. As for the conviction for aggravated sexual battery, we conclude that the evidence is sufficient to sustain the conviction but remand for an amended judgment because the sentence imposed for that offense exceeds the range available for a Range II offender.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in part, Reversed in part, and Remanded for entry of an amended judgment.**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Stephen Bush, District Public Defender; Harry E. Sayle III (on appeal) and Timothy J. Albers (at trial), Assistant Public Defenders, for the appellant, James Moore.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Katie Ratton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The victim testified that she was eight years old at the time of trial and that the defendant was her uncle. When she was six years old, the defendant lived with the victim and her family. According to the victim, the defendant did not have a room and would sleep on the couch. It was during this time that the defendant sexual abused the victim on several occasions.

The victim testified that the defendant would wake her up in the middle of the night and force her to perform fellatio on him. According to the victim, the defendant would ejaculate in her mouth and then make her spit it out in the toilet and flush it. Then, the defendant would give her candy.

The victim recalled a specific incident that occurred on Halloween night. According to the victim, her parents had a Halloween party at their house that evening for the kids. As the party ended, all the children were watching a movie in the living room and the victim ended up falling asleep on the couch. At some point during the night, the defendant woke the victim and made her perform fellatio on him. As this was occurring, the victim's mother, S.G.[1] entered the room. When she did, the defendant told the victim not to say anything to her mother.

S.G. testified that the defendant, his girlfriend, and his girlfriend's children lived with her family from June – November 2012. According to S.G., their home only had three bedrooms so the girls had a room, the boys had a room, she and her husband had a room, and they made the computer room, which was off the living room, a bedroom for the defendant and his girlfriend.

On Halloween night, S.G. and her husband had a party for the kids at their house because they did not want the children to go trick-o-treating. When S.G. went to bed that evening, the children were in the den watching a movie. Around 3:00 a.m., S.G. woke up because her husband was sick, and she went to the living room to sleep on the couch. As S.G. entered the living room, the "defendant's head popped up" from the couch and shortly after that the "victim's head popped up" as well. S.G. then noticed the victim wipe her mouth with the back of her hand.

Fearing the worst, S.G. picked the victim up and immediately took her to her room. Once there, S.G. asked the victim what happened in the living room. In response, the victim told her mother that she did not want to talk about his and to go ask the defendant if she wanted to know. After hearing this response, S.G. immediately left the

---

[1] It is the policy of this Court to protect the anonymity of victims of sex crimes by identifying them and their relatives by their initials only.

house with the victim and drove her to Lebonhuer Children's Hospital. On the drive, S.G. also called the police.

When S.G. and the victim arrived at the hospital, the police were waiting on them. After the officer spoke privately with S.G., he instructed her to speak with the victim again and see if she would open up. S.G. testified that it was during this second conversation that the victim admitted to her that the defendant would "stick his pee-pee in my mouth." After informing the police of the victim's statement, S.G. took the victim to the Memphis Sexual Assault Resource Center ("MSARC").

Sally Discenza, an expert in the field of forensic pediatric nursing, testified that she was called to MSARC in the early morning hours of November 1, 2012, to interview and conduct a physical examine of the victim. Ms. Discenza testified that she took DNA swabs from the victim's mouth and vaginal area.

While the victim was being examined at MSARC, the defendant, who had been detained by the police, was examined by Kristine Gable, a certified sexual assault nurse examiner. Ms. Gable testified that she took DNA swabs from the defendant's cheek, penis, scrotum, and pubis.

The final witness to testify at trial was Special Agent Samantha Spencer. Agent Spencer, an expert in DNA testing, testified that she examined and tested the DNA swabs taken from the victim and the defendant. Agent Spencer's testing of the swabs taken from the victim did not produce the presence of semen. However, her testing of the swabs from the defendant's penis revealed a mixture of the DNA of two individuals. According to Agent Spencer, the defendant was the major contributor to the mixed profile and the victim was the minor contributor to the profile. Because of the small amount of DNA present, Agent Spencer was only able to match four of the sixteen loci when she compared the mixture to the victim's DNA standard. According to Agent Spencer, "the probability of randomly selecting an unrelated individual who would be included as a contributor to this DNA mixture profile is approximately one in nineteen for the African American population." Agent Spencer concluded her testimony stating that, in her expert opinion, the victim's "DNA was, in fact, on the defendant's penile swab."

At the conclusion of Agent Spencer's testimony, the State rested. The defendant rested without presenting proof. The jury subsequently found the defendant guilty of rape of a child and aggravated sexual battery.

At a subsequent sentencing hearing, the presentence report and certified copies of the defendant's six prior felony convictions were entered into evidence. The parties did not present any additional proof. Based upon the information contained in the

defendant's pre-sentence report, the evidence introduced establishing the defendant's prior record, and the arguments of the parties, the trial court determined that the defendant should be classified as a Range II offender.[2] The court then determined that the appropriate sentence for each conviction was a term of forty years. The trial court also concluded that the defendant's conviction for "aggravated sexual battery is an alternative theory for the same offense, therefore, the Court will merge Count 2 [aggravated sexual battery] into Count 1 [rape of a child] for the purposes of sentencing."

This appeal followed. On appeal, the defendant argues the evidence was insufficient to justify a rational trier of fact from finding him guilty of either offense beyond a reasonable doubt. The defendant further argues the trial court imposed an excessive sentence. The State argues the evidence was sufficient to sustain the defendant's conviction for rape of a child, and the trial court properly sentenced the defendant. We agree with the State and affirm the judgment of the trial court.

*Analysis*

## I.    Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to sustain his conviction. He contends that the victim's trial testimony conflicts with her actions immediately after the rape and that the forensic evidence is insufficient. The State responds that the evidence is sufficient.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin,* 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid,* 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass,* 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999) (citing *State v. Dykes,* 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with

---

[2] While the trial court correctly found the defendant to be a Range II offender based on his prior record, we would also note that, pursuant to Tenn. Code Ann. § 39-13-522, a person convicted of rape of a child "shall be punished as a Range II offender." Tenn. Code Ann. § 39-13-522(b)(2)(A).

guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State,* 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs,* 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State,* 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in *State v. Barone,* 852 S.W.2d 216, 218 (Tenn. 1993)) (quotations omitted). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin,* 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557–58 (Tenn. 2000) (citations omitted).

Tennessee Code Annotated defines the crime of rape of a child as "the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39–13–522(a) (2014). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion,

however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body, but emission of semen is not required." Tenn. Code Ann. § 39–13–501(7) (2014).

The evidence, considered in the light most favorable to the State, showed that the defendant moved in with the victim and her family in June 2012. According to the victim, the defendant, on more than one occasion, would come into her room and force her to perform fellatio on him to the point that he would ejaculate. The victim recalled one specific incident that occurred Halloween night. According to the victim, she fell asleep on the couch that evening. As in the past, the defendant woke her in the middle of the night and forced her to perform fellatio on him. However, this time, the victim's mother entered the room. According to the S.G., the "defendant's head popped up" from the couch when she entered followed shortly by the victim's. She also noticed the victim wipe her mouth with her hand when the victim came up from the couch. While she did not initially confide in her mother, the victim eventually told S.G. that the defendant "would stick his pee-pee in her mouth." Finally, DNA testing found the presence of the victim's DNA on the defendant's penis. This evidence is sufficient to show that the defendant unlawfully penetrated the then six-year old victim when he forced her to perform fellatio on him.

Concerning the defendant's claim that the victim's testimony was inconsistent with the fact that she refused to initially implicate the defendant and his claim that the forensic evidence was weak, such are questions of weight to be assigned evidence and credibility determinations are soundly within the purview of the trier of fact and not this Court. By finding the defendant guilty of rape of a child, it is clear that jury resolved any inconsistency in the victim's testimony in favor of the State and found the forensic evidence sufficient to corroborate the victim's testimony. Again, it is not for this Court to second-guess the credibility and factual determinations made by the trier of fact. Thus, the defendant is not entitled to relief on this claim.[3]

## II.    Sentencing

The defendant argues that the sentence imposed was excessive. While he does not take issue with the manner in which the trial court reached its sentencing determination, the defendant contends that a forty-year sentence for a thirty-seven year old man "amounts to a life sentence for him" and, therefore, exceeds the limit for the presumption of reasonableness. The State responds that the defendant's sentence is presumptively reasonable because it is within the range and is supported by the purposes and principles

---

[3] Applying the same reasoning, we conclude that the evidence is sufficient, as well, to sustain the defendant's conviction for aggravated sexual battery.

of the sentencing guidelines.  After reviewing the record before this Court, we agree with the State.

When an accused challenges the length, manner, or range of a sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness.  *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012).  This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute."  *Bise*, 380 S.W.3d at 709–10.  Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result.  *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008).  The party appealing the sentence has the burden of demonstrating its impropriety.  Tenn. Code Ann. § 40–35–401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In imposing a sentence, the trial court must also consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf.  Tenn. Code Ann. § 40–35–210(b).  In addition, the principles of sentencing provide that the sentence should be no greater that that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.  *See* Tenn. Code Ann. § 40–35–103(2), (4).  To provide meaningful appellate review, the trial court must state on the record its reasons for the sentence chosen.  Tenn. Code Ann. § 40-35-210(e).

"[A] trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act.'"  *Carter*, 254 S.W.3d at 343 (quoting Tenn. Code Ann. § 40–35–210(d)).  The trial court shall consider, but is not bound by, the provision that "[t]he minimum sentence within the range of punishment is the sentence that should be imposed . . . [and] should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors."  Tenn. Code Ann. § 40–35–210(c); *Carter*, 254 S.W.3d at 346.  A non-exclusive list of mitigating and enhancement factors are provided in Tennessee Code Annotated sections 40–35–113 and –114.  The weighing of both mitigating and enhancement factors is left to the trial court's sound discretion, but a trial court's misapplication of a mitigating or enhancement factor will not remove the presumption of reasonableness from its sentencing determination.  *Bise*, 380 S.W.3d at 709.

In this case, the trial court conducted a lengthy analysis of the relevant sentencing considerations and the applicable mitigating and enhancement factors. The defendant does not challenge the trial court's application of six enhancement factors: that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40–35–114(5); that the victim of the offense was particularly vulnerable because of age or physical or mental disability, *id.* at –114(4); that the offense was committed to gratify the defendant's desire for pleasure or excitement, *id*. at –114(7); that the defendant before trial failed to comply with conditions of a sentence involving release in the community, *id.* at –114(8); that the defendant was on parole at the time the offense was committed, *id.* at –114(13); and that Defendant abused a position of public or private trust, *id*. at –114(14). The trial court also considered, as mitigation proof, "the defendant's prior upbringing and the impact that that may have or have had on his decisions in life." While the trial court gave varying weights to each enhancement factor, the application of a single enhancement factor is sufficient to justify the imposition of the maximum sentence in the range, even when mitigating factors are also applied. *See, e.g., State v. James Taylor, Jr.*, No. W2006–02085–CCA–R3–CD, 2007 WL 3391433, at *6 (Tenn. Crim. App. Nov. 14, 2007), *no perm. app. filed*. In addition to the enhancement and mitigating factors discussed above, the trial court also noted:

> Again, this Court is going to put by far the greatest emphasis on the fact that Mr. Moore has an extensive history of criminal convictions and behavior. And what's more frightening and more concerning to the Court is that that history is all sex offenses and a large majority of it appears to be with children.

> Mr. Moore may not legally qualify as a sexual predator but in this Court's opinion he is a sexual predator and that he is a danger to children in this community and other communities. He is a danger to women but more particularly female children.

The defendant's sentence for rape of a child is within the appropriate range and the record reflects that the trial court adequately considered the purposes and principles of sentencing. *See Bise*, 380 S.W.3d at 709–10. Thus, the defendant is not entitled to relief from that sentence. However, because aggravated sexual battery, as charged in Count II, is a Class B felony and the appropriate sentencing range is twelve to twenty-five years, that conviction is remanded for entry of an amended judgment reflecting a sentence within that range.

*Conclusion*

Based on the foregoing authorities and reasoning, we affirm the defendant's convictions for rape of a child and for aggravated sexual battery as well as his forty year sentence for rape of a child. However, because aggravated sexual battery, as charged in Count II, is a Class B felony and the appropriate sentencing range is twelve to twenty-five years, that conviction is remanded for entry of an amended judgment reflecting a sentence within that range.

_____

J. ROSS DYER, JUDGE